UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ANDREA SCOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CARLTON J. DITTO, CITIMORTGAGE, ) | No. 1:11-CV-227 |
| INC., MORTGAGE ELECTRONIC ) | |
| REGISTRATION SYSTEMS, INC. ("MERS"), ) | Chief Judge Curtis L. Collier |
| CITY OF CHATTANOOGA, TENNESSEE, ) | |
| STATE OF TENNESSEE by and through ) | |
| HAMILTON COUNTY, TENNESSEE, and ) | |
| SHAUN DONOVAN, THE SECRETARY OF ) | |
| HOUSING AND URBAN DEVELOPMENT ) | |
| ) | |
| Defendants. ) | |

## **M E M O R A N D U M**

Before the Court is *pro se* Defendant Carlton J. Ditto's ("Mr. Ditto") motion to remand (Court File No. 15). Defendants City of Chattanooga, Tennessee ("the City") and Hamilton County, Tennessee ("the County") responded (Court File No. 19). For the following reasons, the Court will **GRANT** Mr. Ditto's motion (Court File No. 15) and will **REMAND** the case to state court.

### I.   Facts & Procedural History

This case arises out of a complicated chain of events involving real property in Lupton City, Tennessee ("the property"), the upshot of which is Plaintiff Andrea Scott ("Plaintiff") is in jeopardy of losing what she alleges is her rightful interest in the property. To briefly state the facts as alleged by Plaintiff: On April 5, 2010, Defendant CitiMortgage, Inc. ("Citi") conducted a foreclosure sale of the property. At the foreclosure sale, Defendant Housing and Urban Development ("HUD") purchased the property. Subsequently, the County, on behalf of the City, scheduled a tax sale to

enforce unpaid 2006 city taxes on the property. Around April 21, 2010 – two weeks after the foreclosure sale – Citi and Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") received notice from the City that the tax sale would take place in June 2010. On June 3, 2010, the City conducted the tax sale, and Mr. Ditto was the winning bidder.

Almost one year later, on April 20, 2011, HUD, the owner of the property pursuant to the foreclosure sale (which preceded the tax sale), sold the property to Plaintiff and delivered a cash deed to her. Prior to purchase, Plaintiff conducted a title search on the property which indicated it was free of any taxes, encumbrances, and liens. It did not reveal the prior tax lien or the June 2010 tax sale to Mr. Ditto. On June 24, 2011, more than a year after the tax sale to Mr. Ditto, the County recorded the tax-sale conveyance to Mr. Ditto. On July 6, 2011, Mr. Ditto forwarded a letter to Plaintiff in which he indicated "I now own the property" and if "we have not initiated meaningful negotiations by August 1, 2011, I will proceed with my rights to possession of the property."

On July 28, 2011, Plaintiff commenced suit against Defendants in the Circuit Court for Hamilton County, Tennessee. She alleged six counts: 1) claims against Mr. Ditto, the City, and the County for declaratory relief and to quiet title; 2) claims against the City for negligence; 3) claims against Citi, MERS, and HUD for negligence and gross negligence; 4) claims against HUD for breach of warranty; 5) claims against the City and the County for violations of 42 U.S.C. § 1983 vis-a-vis Plaintiff's due process rights; and 6) claims against Mr. Ditto for injunctive relief to prevent him dispossessing Plaintiff.

On August 25, 2011, the City and the County removed the case to federal court. Mr. Ditto never consented to the removal; however, in its removal notice the City and County asserted Mr. Ditto's consent was unnecessary because the § 1983 claim was "separate and independent" from the

state law claims against Mr. Ditto and the other Defendants (Court File No. 3). On September 21, 2011, Mr. Ditto filed the present motion to remand, on the grounds that removal to this Court was improper absent his consent.

## II.  REMOVAL AND 28 U.S.C. § 1441(c)

Unanimous consent of the defendants is typically required for a case to be removed from state to federal court. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999) ("The rule of unanimity requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal."). However, 28 U.S.C. § 1441(c) appears to create an exception to this rule:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title [i.e. federal question jurisdiction] is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

In other words, § 1441(c) seems to allow for the removal of an entire case when a federal question is joined with one or more state claims from which it is "separate , and the statute does not require unanimous consent of the defendants. *See Knowles v. Am. Tempering Inc.*, 629 F. Supp. 832, 835 (E.D. Pa. 1985) ("To effectuate removal under subsection (c), the party against whom a federal claim has been asserted need not obtain the joinder of the other defendants.").

In the context of § 1441(c), the Supreme Court has defined "separate and independent" claims as ones bearing a "complete disassociation" from each other. *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 12 (1951); *see also Kurz v. Grosse Pointe Woods*, No. 88-1772, 1989 WL 40138, *2 (6th

3

Cir. 1989) ("For purposes of section 1441(c), 'a separate and independent claim or cause of action' arises from a set of facts separate and distinct from those facts supporting other claims in the complaint, and results in a wrong separate and distinct from other wrongs the plaintiff alleges in the complaint."). In a case with multiple defendants, the test of whether claims are separate and independent "is not whether the defendant in question committed the same wrongful act against the plaintiff as was committed by the co-defendants, but whether the plaintiff suffered a single wrong or injury to which all of the defendants contributed, albeit in different ways." *Morris v. Boucher*, No. 88-1258, 1989 WL 54110, *2 (6th Cir. 1989). In other words, "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)."[1] *Finn*, 341 U.S. at 13.

## III. DISCUSSION

---

[1] Courts have noted 28 U.S.C. § 1441(c) is a "bizarre" statute, because "the express reference to 'separate and independent' claims implies that the more unrelated a state claim is to a federal claim, the more likely it is that removal is appropriate." *Fullin v. Martin*, 34 F. Supp. 2d 726, 729 (E.D. Wis. 1999) (quoting *Charles D. Bonanno Linen Serv., Inc. v. McCarthy*, 708 F.2d 1, 9 (1st Cir. 1983)). Additionally, the statute seems to create a constitutional paradox. In order for federal and state claims to constitute an Article III "case" arising under the Constitution or laws of the United States – the touchstone of federal question jurisdiction – the claims must "derive from a common nucleus of operative fact," that is, they must be sufficiently related to each other. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). However, § 1441(c) seems to exceed *Gibbs*' jurisdictional limit, for it "allows the removal of state law claims along with a federal claim only if they are *sufficiently unrelated* to each other." *Fullin*, 34 F. Supp. 2d at 732. It is difficult, if not impossible, to see how state and federal claims could "arise from a common nucleus of operative fact" while being "separate and independent," as *Finn* interpreted the phrase. For that reason, a number of courts have held § 1441(c) unconstitutional. *See, e.g.*, *Id.* at 735, *Porter v. Roosa*, 259 F. Supp. 2d 638 (S.D. Ohio 2003). Nonetheless, the Court need not reach on the constitutionality of § 1441(c) in this case since, as explained below, this case does not involve separate and independent claims.

The issue before the Court is whether the federal claim in this case, namely, Plaintiff's § 1983 due process claim against the City and County as stated on Count 5 of the complaint, is "separate and independent," within the meaning of § 1441(c), from the state claims. The Court concludes it is not.

The City and County contend the federal claim is separate and independent because "the claim if sued upon alone could have been brought properly in federal court" (Court File No. 19, p. 5). However, this is not the standard for determining whether a federal claim is separate and independent from state claims. Indeed, if it were then all federal claims would necessarily be separate and independent from state law claims, since any federal claim if sued upon alone can be properly brought in federal court. In that case, § 1441(c)'s limitation to "separate and independent" cases would be no limitation at all; any case involving at least one federal claim would be removable by the defendant to federal court despite lack of unanimous defendant consent. Instead, as the Supreme Court articulated in *Finn*, for a federal claim to be separate and independent of state law claims, the claims must bear a "complete dissociation" from each other; that is, the plaintiff must have suffered multiple wrongs from unrelated conduct. "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Finn*, 341 U.S. at 13.

Here, Plaintiff alleges essentially a single wrong: the clouding of his title to the property. To be sure, the Defendants allegedly contributed to this wrong in various ways, as they played various roles in the foreclosure and tax sales, and gave or failed to give notice of relevant title information to varying degrees. However, from Plaintiff's perspective his injury is single: he bought a piece of property but was then threatened with dispossession due to a prior tax sale, evidence of

5

which had not shown up on the title search. The alleged wrongful actions of the City and County in Count 5 – the federal claim – relate directly to this injury. In Count 5, Plaintiff alleges the City and County failed to give proper notice of the tax lien and sale, thereby contributing to Plaintiff's unknowing acquisition of a clouded title and depriving Plaintiff of his rights to due process. Regardless of the merits of this claim, the City and County's alleged conduct with respect to the tax sale is integrally related to Plaintiff's claimed injury of clouded title, as is much of the alleged conduct described in other Counts.[2] That is to say, the actions described in Plaintiff's federal claim "interlock" with those described in the state counts, and contributed to Plaintiff's single wrong. As such, the Court finds Plaintiff's federal claim against the City and County is not a "separate and independent" claim within the meaning of § 1441(c). Accordingly, removal of this case without Mr. Ditto's consent was improper.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the non-unanimous removal of this case was improper, and remand is in order. Accordingly, the Court will **GRANT** Mr. Ditto's motion to remand (Court File No. 15), and will **REMAND** the case to the Circuit Court for Hamilton County, Tennessee.

An order shall enter.

---

[2]For example, in Count 3, Plaintiff claims Citi, MERS, and HUD were negligent in failing to redeem the property by paying back taxes. Although this conduct is distinct from the City and County's alleged failure to properly give notice of the tax sale, both contributed, albeit in different ways, to Plaintiff's single injury of clouded title. If Citi, MERS<, and HUD had redeemed the property, Plaintiff would presumably not be holding a clouded title. Likewise, if the City and County had not allegedly failed to give proper notice of the tax sale, Plaintiff would presumably not be holding a clouded title.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**

7